Filed April 29, 1891.

---

No. 15,662.

### BINGHAM ET AL. *v.* WALK ET AL.

ATTORNEY AND CLIENT. — *Privileged Communications.* — Communications made by an agent of the client to his attorney concerning the client's business are not privileged communications as between the agent and the attorney, and, with the client's consent, the attorney may testify to them.

EVIDENCE.—*Res Gestæ.*—Where the question at issue is whether the husband or the wife was a member of a partnership, conversations between the wife and a member of the partnership relating to the management of the business are admissible as part of the *res gestæ.*

SUPREME COURT.—*Conflicting Evidence.*—Where the evidence is conflicting the Supreme Court will not pass upon its sufficiency.

PRACTICE.—*Appeal.—Sufficiency of Complaint.*—Where some of the defendants file a cross-complaint alleging the same facts alleged in the complaint, and asking the same relief, they can not upon appealing from a judgment in favor of the other defendants question the sufficiency of the complaint.

SAME.—Where evidence is objected to on the ground of its incompetency and immateriality, an objection can not be made on appeal on account of the incompetency of the witness

SAME.— *Objections to Evidence.*—Only such objections to the admission of evidence as are made in the court below will be considered on appeal.

NEW TRIAL.—*Surprise.—Testimony of Adverse Party's Witness.*—It is no cause for a new trial that the unsuccessful party was surprised by the testimony of a witness called by his adversary.

SAME.—*Motion.*—*Counter-Affidavits.*— Counter-affidavits controverting the facts contained in affidavits filed in support of a motion for a new trial may be received.

From the Marion Circuit Court.

*F. Knefler* and *J. S. Berryhill*, for appellants.

*W. W. Herod* and *W. P. Herod*, for appellees.

MILLER, J.—This case was brought by Henry H. Mc-Gaffey, as administrator of the estate of Wheelock P. Bingham, deceased, against Julia C. Walk, Harriet A. Bingham, widow, and George M. Bingham and others, children of Wheelock P. Bingham, to determine the right of property of a jewelry store in the city of Indianapolis.

The complaint avers that the defendant Walk and the decedent were equal partners in the jewelry store, which was of the value of more than thirty thousand dollars; that, after his appointment and qualification, the administrator called upon the defendant Walk and demanded of him an accounting of the partnership and firm affairs; that, upon such demand, the defendant Walk refused to account or to settle the business of the firm as surviving partner, asserting that Wheelock P. Bingham was not, at the time of his death, and never had been, his partner in said business; that the estate of the deceased had no interest in the assets of the firm, but that the defendant Harriet A. Bingham was, and always had been, his partner in business.

The defendants Walk and Hattie A. Bingham answered jointly, by a general denial of the complaint, and, in a second paragraph, alleged that they were, and always had been, partners, composing the firm of " Bingham & Walk," and Wheelock P. Bingham was not a partner in the firm, and had no interest therein.

The appellants George M. Bingham and other children of Wheelock P. Bingham filed a general denial to the complaint, and also a cross-action against Walk and Harriet A. Bingham, charging that their father was a full partner in

the business with Walk; that he refused to settle as a surviving partner, and asking for the appointment of a receiver to wind up the business of the firm and distribute the proceeds according to law.

The cause was submitted to the court for trial upon the complaint and cross-actions, and resulted in a finding and judgment for the appellees Walk and Harriet A. Bingham.

The administrator of Wheelock P. Bingham refuses to join in this appeal.

The sufficiency of the complaint is challenged by an assignment of error in this court; the objection being made that it does not show that Wheelock P. Bingham was indebted at the time of his death, so as to require any portion of the assets of the partnership to be applied to their liquidation, and that therefore the administrator was not an interested party within the meaning of section 6050, R. S. 1881.

The administrator and the children of the deceased were not, in interest, adverse parties.

In their pleadings they allege, substantially, the same facts and ask the same relief. They were alike unsuccessful in the litigation.

The appellees were their adversaries, and, as between them, the litigation was upon their cross-actions. We could not reverse a judgment in favor of the appellees because some of the pleadings of their adversaries are insufficient. We do not, therefore, pass upon the sufficiency of the complaint as a cause of action.

One of the causes for a new trial, the overruling of which is assigned as error, was the alleged insufficiency of the evidence to sustain the finding of the court. The other cause relates to the admission of evidence over the objection of the appellants.

The evidence, as it comes to us in the record, is very conflicting, and we can not, therefore, under the well established rules of this court, pass upon its sufficiency.

A correct understanding of the ruling of the court upon the admission of evidence can not be had without a review of portions of the testimony introduced.

The evidence showed, without contradiction, the following facts:

That W. P. Bingham was a practical jeweler of large acquaintance, who had been unfortunate in business, and in the year 1877 had been adjudged a bankrupt; that prior to receiving his discharge as a bankrupt, a partnership was formed under the firm name of Bingham, Walk & Mayhew, for the purchase of a stock of jewelry; that the appellee Julius C. Walk and one James N. Mayhew were two of the members of the firm. A stock of jewelry was purchased at the price of $16,187, of which $8,500 was paid in cash at the time of the purchase, and notes given for the residue, which were afterwards paid out of the earnings of the business; that this sum of $8,500 was made up as follows: Walk borrowed for himself and Bingham the sum of $3,000, being $1,500 for each; Mayhew, who had negotiated the trade, put in $5,-500, but was to, and afterwards did, draw out $1,000 of that sum; that shortly before the formation of the partnership Wheelock P. Bingham married the appellee Mrs. Bingham, she being his second wife, and being worth several thousand dollars in her own right; that the appellants are the children of Bingham by a former wife; that the money borrowed by Walk was loaned upon security furnished by him, without assistance from either Bingham or his wife; that prior to the purchase of the stock of jewelry, Mrs. Bingham made an attempt to borrow money upon some collateral she held, but was unsuccessful, and, so far as the evidence shows, paid nothing into the firm, but that afterwards she paid $600 on the $1,500 note executed by her husband for the money that formed part of the cash payment for the stock; that for a part of the deferred payment on the stock of goods, a note for $2,000 was signed by W. P. Bingham, Walk and Mayhew individually, and the payment of the same secured by a mort-

gage on the individual property of Mayhew. The business was profitable from the start, all goods being paid for as purchased, and the notes executed in the purchase of the stock paid at or before they matured; that by agreement each member of the firm drew out as salary $25 per week, which was afterwards increased to $35 and then to $50; that about five years after the formation of the partnership Bingham and Walk purchased of Mayhew his third interest in the firm for $18,000, paying him in cash $12,000 and executing a note for $6,000, due three years after date, signed by W. P. Bingham and Julius C. Walk, and secured by a second mortgage on the separate real estate of Mrs. Bingham; that the name of W. P. Bingham was given as the member of the firm on the business cards of Bingham, Walk & Mayhew, also on their letter-heads and bills; that he was also given as a member of the firms of Bingham, Walk & Mayhew, and of Bingham & Walk, in the city directory each year during the existence of these firms; that upon the dissolution of the firm of Bingham, Walk & Mayhew, caused by the retirement of Mayhew, the notice of dissolution published in the daily papers were signed by W. P. Bingham, as a member of the firm; that Bingham was the principal manager in the business of both firms, made most of the purchases of goods, and had charge of the books; that the salary account of the Bingham member of the firms was kept in the name of W. P. Bingham on the firm books; that during a portion of the time a small account was kept with Mrs. Bingham, and in her name, consisting mostly in charges for goods purchased by her in the store; that the administrator of the estate was selected by Walk and Mrs. Bingham, who renounced her right to administer in his favor.

The evidence about which there was a conflict, was in the testimony of Mayhew, who testified that Wheelock P. Bingham was a partner while he was a member of the firm, and that Mrs. Bingham had nothing to do with the partnership. Also, in the testimony of Albert G. Orens, who kept the

books of the firm until the death of Bingham, who corroborated Mayhew on the one side; and the evidence of Walk and Mrs. Bingham on the other, who testified that Bingham never had any interest in the business, but acted throughout as a manager of Mrs. Bingham's interests therein; that his name was used in the firm upon the supposition that it would, on account of his wide acquaintance, help the business.

They were corroborated by the testimony of Charles A. Shotwell, who testified to having heard Mr. and Mrs. Bingham talk of their business relations; and to some extent by the evidence of R. H. Bingham, a brother of the deceased, who testified that his brother told him on several occasions that Mrs. Bingham was the Bingham of the firm; that she furnished the money that went into the partnership on the Bingham account, and that he, Bingham, was not worth a dollar.

It also appeared, without dispute, that at the inception of the partnership of Bingham, Walk & Mayhew, articles of co-partnership were drawn up and kept for many years in the safe, but were never signed. They had disappeared some time prior to the trial, but it does not appear just when, or what became of them. The evidence on the subject all tends to show that they were drawn up by some member of the firm of Rooker & Norton. This agreement, if it could have been found, would have furnished important, if not controlling, evidence upon the question in dispute; and, in the absence of the writing, it was of the utmost importance to ascertain which one of the Binghams was therein designated as a member of the firm. Upon this subject Mayhew testified that W. P. Bingham was the party named, and Walk was equally positive that it was Mrs. Bingham.

The last witness placed upon the stand, by the appellees, was Judge Norton, formerly a member of the firm of Rooker & Norton, who during the course of his examination testified as follows:

" Q. You may state, Judge Norton, whether Mrs. Bingham

and Mr. Walk and Mr. Mayhew called upon the firm of Rooker & Norton to have articles of co-partnership prepared? A. I do not think that our firm, or any firm that I was connected with, drew any articles of partnership for these parties. I think whatever was done was done for Mr. Bingham when he was a client of ours. I think there was an article of co-partnership drawn for Mrs. Bingham at Mr. Bingham's request.

" Q. State who were named in those articles as partners? (The court: 'Did you see the instrument yourself?' The witness: 'I think I did.') A. Mrs. Bingham, Mr. Walk and Mr. Mayhew.

" Q. What was the style of the firm? A. Bingham, Walk & Mayhew.

" Q. Who did Mr. Bingham pretend to represent in having those articles drawn, and in the management of the business created by the partnership? A. My memory is that this was done for Mr. Bingham himself, and on that ground I decline to say anything about it, unless the court requires me to. I think all the work was done for Mr. Bingham himself. He was a client of ours, all the talk was with Mr. Bingham."

At this point the court entered into an examination of the witness with reference to his competency to testify, during the course of which the witness said that Mr. Bingham came alone; that they had been his attorneys in the bankruptcy proceedings, and after that was through this arrangement came up, and he, Bingham, had prepared whatever was prepared, and that he paid for it.

After this examination, the witness, over the objection of the appellants, testified that Mrs. Bingham was named in the article as one of the partners in the firm of Bingham, Walk & Mayhew, and that it was therein provided that W. P. Bingham should represent her interest, but that he was to have no monied interest in the firm on his own account.

We are urgently called upon to reverse this cause because

of the admission of this evidence.    We have given this question a careful examination and have arrived at the conclusion that the court did not err in its admission.

It is provided by statute, section 497, R. S. 1881, " The following persons shall not be competent witnesses :

" *Third.*    Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases."

This is substantially a re-enactment of the provisions of the common law, and should be examined in the light of the common law authorities.

When the witness was placed upon the stand the presumption is that he was called upon to tell the whole truth. The burden was upon the party who sought to have a portion of his testimony suppressed because they were privileged communications, to show such incompetency.    The fact that would make his statements incompetent must be proved. The only way this could be done was by an examination of the witness himself, which was done.    In order to make the witness incompetent it was necessary to show that the relation of attorney and client existed between him and W. P. Bingham, and that the communication was made by the client for the purpose of obtaining counsel, advice or direction in regard to his legal rights.    The facts elicited by the examination show that the conference related to the legal rights and business of Harriet A. Bingham, rather than that of her husband.

The relation of attorney and client existed between her and the witness, rather than between her agent and the witness.    It is not necessary that a party shall be bodily present in the office of an attorney in order to employ him.    An attorney may be employed by agent, and all consultations carried on between the attorney and client through such agent.    Mrs. Bingham could, if she desired, have objected to the competency of the witness, and insisted that all communication between her and her attorney was privileged,

whether they were carried on through her agent, in person, or by letter. There was no community of interest between the husband and wife in the transaction in which the attorney was engaged, and about which he was called to testify.

In *Shean* v. *Philips*, 1 F. & F. 449, the action was against a trustee for money received by him under the trust. An attorney was called to testify to communications made to him by the trustee concerning certain of the claims, and as to his supposed lien. The evidence was objected to as privileged. The court held the witness competent, on the sole ground that the employment having been made to collect money due the trust, the witness was the attorney of the *cestui que trust*, and not of the trustee. To the same effect, see *Talbot* v. *Marshfield*, 2 Dr. & Sm. 549.

Had the preliminary examination of the witness brought out anything indicating that the deceased, at the time when the article was drawn, was consulting or advising with the attorneys on his own account, or for his own benefit, a different question would arise.

Complaint is made of the admission of portions of the testimony of Julius C. Walk, in which he detailed conversations between himself and Mrs. Bingham relating to the management and control of the store, portions of the conversations not being shown to be within the presence of her husband.

It was competent for the appellees to show any conduct or acts of Mrs. Bingham that tended to show her exercise of control or authority in the partnership as part of the *res gestœ*. The record discloses the fact that the court admitted the evidence as a circumstance showing her participation in the firm business.

During the examination of Mrs. Bingham she was permitted to testify to matters occurring during the lifetime of her husband. Objections were made to her testimony from time to time, on the ground of its incompetency and immateriality. Toward the close of her evidence the objection was

made for the first time that she was incompetent under the statute. The court at once sustained the objection to such evidence, and it was thereafter excluded. A motion was then made to strike out the evidence she had given prior to the making of the objection for her incompetency, and this motion was overruled.

It is claimed by the appellants that the objection to the evidence was obvious, within the rule laid down in *Kinsman* v. *State,* 77 Ind. 132, and *Underwood* v. *Linton,* 54 Ind. 468, so as to require its exclusion without further objection.

The only objections to the testimony of this witness which are presented in this court relate to the incompetency of the witness to testify. If the witness was competent, the evidence was admissible. The appellants did not object, in the trial court, to the evidence, the admission of which is complained of, on account of the incompetency of the witness, but assigned special reasons for its exclusion, entirely consistent with the competency of the witness to testify, and such as were well calculated to mislead the court and the adverse party as to the real grounds of their objection to the evidence.

To permit the appellant to shift their grounds of objection would be grossly unfair and contrary to the rules established by this court. *Ohio, etc., R. W. Co.* v. *Walker,* 113 Ind. 196 ; *Fitzpatrick* v. *Papa,* 89 Ind. 17.

The evidence having been admitted without objection to the competency of the witness, it was not error to overrule the motion to strike out the evidence. *Brown* v. *Owen,* 94 Ind. 31.

One of the causes for which the appellants asked a new trial was the claim that appellants' attorneys were surprised by the testimony of the attorney for the administrator, and mislead in their preparation of the cause for trial. After reading the affidavits filed in support of this cause, we are not disposed to call in question the genuine nature of their surprise, but it does not appear that they were placed in any

worse position than they would have been if they had been advised in advance of the nature of his testimony. In addition to this, the witness was placed upon the stand by their adversaries, and the evidence was competent under the ssues; such being the case, the appellants were not entitled to a new trial on the ground of surprise. *Gardner* v. *State, ex rel.*, 94 Ind. 489.

It was not error to receive and consider affidavits filed by the appellees controverting the facts contained in the affidavits filed in support of the motion for a new trial. *Mitchell* v. *Chambers*, 55 Ind. 289; *Hamm* v. *Romine*, 98 Ind. 77.

We find no error in the record for which this case can be reversed, and we are, therefore, compelled to affirm the judgment, with costs.

Judgment affirmed.

ELLIOTT, J., did not sit in this case.

Filed April 28, 1891.