## DAYWITT ET AL. *v.* DAYWITT.

[No. 9,182.   Filed January 2, 1917.]

1. HUSBAND AND WIFE.—*Alienation of Affections.—Measure of Damages.*—The services, conjugal affection and society of a husband is valuable property, and, in a suit by the wife for the alienation of her husband's affections, the measure of damages is the value of the husband of whom she has been deprived. p. 446.

2. APPEAL.—*Review.—Invited Error.—Instructions.*—In an action by the wife for alienation of her husband's affections, defendants cannot complain of an instruction directing a finding for plaintiff if either of them maliciously alienated the husband's affections, where the error, if any, in such instruction was invited by an instruction of the same nature requested by defendants. p. 449.

3. APPEAL.—*Review.—Waiver of Objections.—Instructions.*—Where, in an action by the wife for alienation of her husband's affections, ample opportunity was afforded two defendants to submit a form of verdict to find against one only if found liable, in addition to the two forms submitted, one to find for plaintiff and the other for defendants, but they made no request therefor at the proper time, they cannot complain of an instruction directing a verdict against both, if either of them maliciously did the acts charged. p. 449.

4. TRIAL.—*Instructions.—Malice.—Invading Province of Jury.*—In an action for alienation of the husband's affections, an instruction defining malice and informing the jury that, if it found that defendants did the acts charged in the complaint and thereby caused the alienation of the husband's affections, and if it found that such acts were done purposely without just or probable cause, it could infer that such acts were done maliciously, but that in case it should so find, whether such inference should be drawn from the acts of the defendants was for the jury to determine from all the evidence, was not objectionable as invading the province of the jury to determine whether it should infer that the acts charged were malicious. p. 449.

5. APPEAL.—*Review.—Refusal of Instructions.*—It is not error to refuse requested instructions where the subject-matter thereof is fully covered by the instructions given. p. 450.

6. HUSBAND AND WIFE.—*Alienation of Affections.—Action.—Evidence.—Admissibility.*—In an action by a wife against her husband's parents for alienation of affections, testimony of the wife as to certain acts of her husband and sister-in-law just prior to plaintiff's separation from her husband is inadmissible in the

absence of other evidence connecting defendants with such acts. p. 450.

7. HUSBAND AND WIFE.—*Alienation of Affections.—Parent and Child.—Advice.—Presumptions.*—A parent may always in good faith and for the best interest of his child advise and counsel with him, and, where advice is given, the presumption is that it was induced by feelings of the highest parental affections and only for the child's good. p. 452.

8. EVIDENCE.—*Res Gestae.—Alienation of Affections.—Malice.*—In an action by a wife against her husband's parents for alienation, defendants should have been permitted to show as part of the *res gestae* that they allowed the son at the time of his marriage to bring his wife to the parental home to reside, and furnished him money for medical expenses during her illness and that when informed by the doctor that an operation on plaintiff was necessary they instructed the doctor to perform such operation, for which the evidence showed they subsequently paid. p. 452.

9. EVIDENCE.—*Res Gestae.—Alienation of Affections.—Malice.*— Where, in an action by a wife against her husband's parents for alienation, plaintiff contended that defendants permitted their daughter to move into a house provided by them for the purpose of driving her out, defendants should have been permitted to show, as a part of the *res gestae*, the arrangement made concerning the occupancy of the house. p. 454.

10. TRIAL.—*Witnesses.—Credibility.—Jury Question.*—In action for alienation, declarations which are part of the *res gestae* are admissible in evidence, and it is for the jury to determine whether they were made in good faith by the party offering them or were merely manufactured evidence for use at the trial, it being no objection to such declarations that they were self-serving. p. 454.

11. EVIDENCE.—*Res Gestae.*—The term *res gestae* includes the surrounding facts of a transaction, and also the accompanying declarations, to explain the act done, or for showing motive for acting, although such declarations aside from this doctrine may be in the nature of hearsay evidence. p. 454.

12. APPEAL.—*Review.—Witnesses.—Credibility. — Jury Question.*— It is for the jury to determine the credibility of witnesses, and not for the court on appeal. p. 455.

From Clinton Circuit Court; *Joseph Combs,* Judge.

Action by Helen Daywitt, by her next friend, Jane Stewart, against Albert Daywitt and another. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*James V. Kent* and *Thomas M. Ryan,* for appellants.

*Leonard J. Curtis, John W. Strawn* and *William Robison,* for appellee.

IBACH, J.—This action was brought by appellee, an infant and wife of Lawrence Daywitt, by her next friend, against appellants, who were the parents of said Lawrence, to recover damages because they had wilfully, maliciously and wrongfully alienated the affection of her husband, and had maliciously and wrongfully induced him to drive her from their home, and had wrongfully persuaded him to abandon her and their children without support. The questions in the record, presented for our determination, relate to the court's refusal to give to the jury certain instructions requested by appellants, and in giving others on the court's own motion, for admitting irrelevant testimony and for excluding competent testimony.

Appellants first contend that instruction No. 11 requested by them should have been given, and is as follows: ''You are instructed that the damages in a case of this character is to be measured by the value of the husband of whom the wife has been deprived and if you should find for the plaintiff in this case you would have the right to consider, in determining the question of damages, the treatment of the plaintiff by her husband during their marital life and before the alienation of the husband's affections, if such alienation has been shown by the evidence, and you may also consider in that connection the happiness or lack of happiness which prevailed in the home of the plaintiff and her husband before such alienation and any other facts shown by the evidence which show the domestic relations of the plaintiff and her said husband prior to such alienation, if you find in fact that such alienation has occurred.''

Without approving the form of this instruction, we concur in the legal proposition involved, that the services, conjugal affection and society of a husband are valuable

1. property, and in a suit by the wife for the alienation of her husband's affections, the measure of damages

is the value of the husband of whom she has been deprived. A man who demeans himself toward his wife as a dutiful, kind and loving husband is much more valuable to her than one who has been cruel, indifferent and neglectful of her. And it is evident that the trial court considered an instruction embodying such legal proposition proper in view of the facts of the case, for on its own motion, the following instruction was given: ''In case you find for the plaintiff you may take into consideration what if any damages she has sustained on account of the loss, if any, of the services of her husband, also you may consider, if the evidence shows, what, if any damages she has sustained on account of the loss, if the evidence shows, of the society, companionship, affection, and protection of her husband.''

The record discloses that the appellants were permitted to show the character of the home life of plaintiff and her husband, and with this evidence before them, the jury was told in the instruction that, if they found for the plaintiff, they might, in calculating her damages, consider both loss of service and loss of companionship. Such terms and expressions embrace the elements which go to make up the value of the husband; consequently the instruction given contained substantially all that was included in the instruction refused although not so clearly stated.

It is also contended that there was error in the giving of instruction No. 3 of the court's own motion. This instruction is as follows: ''In order for the plaintiff to recover in this cause, it must be shown by the evidence that the defendants, or one of them, alienated the affections of the plaintiff's husband from her, or by some acts of theirs caused the separation of the plaintiff and her husband. And it must also be shown by the evidence that the defendant's conduct in so doing, was malicious, or that the acts causing the said alienation of affections, or separation, were done through malice. And, if you find from the evidence that the defendants, or either of them, did cause the aliena-

tion of affections of plaintiff's husband, and did thereby
cause the plaintiff and her husband to separate, then it
is a question of fact for you to determine from all of the
evidence given in the cause whether or not the acts of the
defendant, or defendants, were done maliciously, or were
done in good faith for the best interests of their son. When
a father and mother are charged with the alienation of a
husband's affection, the 'quo animo' is the important con-
sideration. That is, from what motive did the parents act—
was it malicious, or was it inspired by a proper regard for
the welfare and happiness of the child? The reciprocal
obligations of parent and child last through life, and the
duty of discharging them does not cease by the marriage
of the child. When trouble and disagreements arise be-
tween the married pair, the most natural prompting of the
child direct it to find solace and advice under the parental
roof. All legitimate presumptions in such cases must be that
the parent will act only for the best interests of the child.
The law recognizes the right of the parent in such cases to
advise the son or daughter, and when such advice is given
in good faith, and results in a separation, the act does not
give the injured party a right of action. In such a case
the motives of the parents are presumed to be good until
the contrary is made to appear. This presumption of good
faith on the part of the parents is like any other presump-
tion that may arise and it may always be overcome by evi-
dence to the contrary. So it is for you to determine from
the evidence in this cause whether or not the defendants,
or either of them did cause the alienation or separation
charged in the complaint and if so whether or not their
motive in so doing was malicious. If you find from the
evidence that the defendants, *or either of them,* did the
acts charged and with the result as charged and that the
acts were done through malice, then your verdict should
be for the plaintiff. But unless you find that they, or
either of them did cause the alienation or separation charged

and that it was done through malice then you should find for the defendants.''

The next to the last sentence of this instruction is the portion particularly criticized, and the objection is that the jury is not instructed as to a finding against the defendants separately and that only two forms of verdict were submitted, one a finding for the plaintiff and the other a finding for the defendants. In other words, appellants contend that the instruction directed a verdict against both defendants if the proof showed only one of them guilty. The charge is subject to this criticism, but the state of the entire record shows that the giving of it was harmless and that appellants are in no position to ask for a reversal because it was given.

The record shows that an instruction tendered by appellants and given to the jury was of the same nature, so that even if there was error in the form of the instruction now contended for, it was an invited error and appellants must be charged with it and they cannot now complain. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99.

Again ample opportunity was afforded appellants to have three forms of verdict submitted to the jury instead of two and not having made such request at the proper time, it seems to us in view of the entire record that such contention is without merit at this time.

Appellants also condemn instruction No. 4 given on the court's own motion. In this instruction the court said: ''Malice is defined as a disposition or intent to injure another or others for the gratification of anger, jealousy, hatred, revenge or the like; active malevolence. A deliberate intention to do evil either with or without personal ill-will. A willfully framed design to do another an injury. If you find that the defendants or either of them did the acts charged in the complaint and

thereby caused the alienation or separation as alleged, and if you find that the said acts were done purposely and without just or probable cause, then you may infer that such acts were done maliciously. But in case you so find whether or not such inference should be drawn from the acts of the defendants is for you to determine from the evidence in this cause.''

The objection raised is that the court invaded the province of the jury and it is argued that it was for the jury to determine not only whether or not it should draw the inference of malice but whether or not any given state of facts would warrant such inference.

In this instruction, in defining malice, the court followed the instruction used by the court and approved by this court in the case of *Kelso* v. *Kelso* (1908), 43 Ind. App. 115, 86 N. E. 1001. The jury was there informed, if they found that the wrongful acts charged in the complaint were committed as charged, and were done purposely and without probable cause, then they might infer malice, but in any event it was for them to determine from all of the evidence whether such inference should be drawn. There is no direction for them to so find; no such words as ''must'' or ''ought'' are used. There could have been no objection urged if the court had simply informed the jury that malice need not be proven by direct evidence but it may be inferred from all the evidence introduced, and we believe that that, in effect, is what the jury were told and that they so understood it.

5. Other instructions tendered by appellants were refused but there is no ground for complaint for the reason that the court fully covered them by other instructions given.

6. Objection is made to the action of the court in admitting in evidence, over appellants' objection, certain acts of appellee's husband on the day of, and the day preceding, their separation, also the conduct of her

sister-in-law toward her on the same days, all of which acts were done in the absence of appellants, and also in admitting in evidence over objection the following statement made by appellee's husband to appellee's mother in her presence: "My father says if you don't take the woman and kids and get off the place he· will kick you off."

We are not unmindful of our statute and the universal rule which requires the protection of marital communications, but we do not consider that the class of evidence objected to falls within the letter or spirit of the statute or within the rule that confidential communications between husband and wife are not admissible in evidence in favor of the wife in a suit by her against the parents of her husband for the alleged alienation of his affections. Neither does it fall within the rule that conversations between persons not parties to the action, had in the absence of the parties against whom the same are introduced, are not competent evidence.

To support one of the material averments of the complaint it was essential for appellee to show the loss of the affections of her husband and that she was driven from her home on account thereof. The evidence objected to was competent for that purpose and none other, and to make her case it was necessary for appellee to go further and show that the cause of their separation was occasioned by the misconduct of the husband's parents. But what the husband and sister-in-law did, in the absence of other evidence, in some manner connecting the appellants with it, would have no probative value against appellants and would be no proof to support that issue. The fact that appellee's husband reported that his father had made a threatening statement, which report may have had some influence on appellee's conduct, could not be taken as any evidence that the parents had actually made such a statement and would be no proof that appellants' conduct occasioned the withdrawal of her husband's affections.

It is further contended that the court erred in refusing to admit in evidence declarations of the appellants as part of the *res gestae* showing the absence of malice. Our courts have many times held that declarations made at the time of the transaction inquired about, and which are a part of the *res gestae,* are admissible. *Gifford* v. *Gifford* (1914), 58 Ind. App. 665, 107 N. E. 308; *Doe* v. *Reagan* (1839), 5 Blackf. 217, 33 Am. Dec. 466; *Lockwood* v. *Rose* (1890), 125 Ind. 588, 595, 25 N. E. 710; *Bingham* v. *Walk* (1891), 128 Ind. 164, 172, 27 N. E. 483. In all cases like the present malice must be shown; the *quo animo* is the chief subject of inquiry. A parent may always in good faith

7. and for the best interests of his child advise and counsel with him, and, where advice is given, the presumption is that it was induced by feelings of the highest parental affection and only for the child's good. *Reed* v. *Reed* (1893), 6 Ind. App. 317, 33 N. E. 638, 51 Am. St. 310.

Appellee had been permitted to show acts of disapproval of her marriage with appellants' son when they were informed that such marriage was a necessity, but

8. it was shown that shortly thereafter they both lived with appellants in their home for some considerable time and were living there when the baby was born. Appellants then offered to show that when their son, who was only eighteen years of age and was without money or work, requested permission to bring his wife to their home appellants told him he could and that they might live with them as their children and when he was twenty-one years of age the father would help him to get a start on the farm.

There was evidence that appellants had at different times shortly after his marriage given their son money. They offered to show that this was done on the request of their son and because he had reported to them that appellee was sick; that he was out of work and needed the money to take care of her. They also offered to show that immediately

after appellee's baby was born a serious operation became necessary on account of lacerations due to childbirth and that the doctor came to appellants and informed them that an operation was necessary and that such doctor was then instructed by them to prepare for and operate upon appellee. This offer was refused, but the court did allow the fact to be shown that appellants had paid all the expenses occasioned by appellee's sickness.

Appellee introduced evidence that while she and her husband lived on the farm and while appellants were living on an adjoining farm, appellants permitted their daughter and son-in-law to move into the same house occupied by appellee and her husband. Appellants offered to prove, for the purpose of showing absence of malice, a contract made with their own daughter and her husband, at a time when it was believed that appellee had finally left her husband, and appellee's husband concerning the occupancy of the house and the operation of the farm.

Since the question of good faith controls in these cases we believe that the proof offered was a part of the *res gestae* and should have gone to the jury. In the case of *Hamilton* v. *State* (1871), 36 Ind. 280, 282, 10 Am. Rep. 22, this language is used: "It is well established * * * that in all cases, civil and criminal, where evidence of an act done by a party is admissible, his declarations, made at the time, having a tendency to elucidate, explain, or give character to the act, are also admissible. They are a part of the transaction, and for that reason are admissible; and it makes no difference, so far as the admissiblity of the declaration is concerned, whether it be in favor of, or against the party making it."

If the money was given to the husband, it was competent for the purpose of showing the absence of malice that it was furnished for the express benefit of appellee and to relieve her wants. If large sums of money were paid for her by appellants on account of her serious illness, it was

competent to show the absence of malice by proving by the physician that he had informed appellants of the serious condition of appellee and that her health could only be restored through an operation. That the fact that appellants received information of appellee's critical condition and that such information caused them to act, was as much a part of the case as the fact that she was brought to appellant's home, there operated upon, and all expenses paid by appellants, and this is especially true since appellee insisted that she was forced to return to appellants' farm against her will. Again appellee strongly contended that appellants allowed their own daughter to move into a part of the house occupied by herself and husband for the purpose of driving her out. The arrangement made between the parties concerning the occupancy of the house and the conduct of the farm were also a part of the *res gestae* and it should have been shown to disprove malice. There are many kindred declarations which should not have been excluded, the jury should have received them, and it was for them to say whether the declarations offered as a part of the *res gestae* were made in good faith or were merely manufactured evidence to be used in their own behalf. It has been held that "'it is no objection to such declarations that they are self-serving, if they are part of the *res gestae*.'" *McConnell* v. *Hannah* (1884), 96 Ind. 102, 106. The term *"res gestae"* includes the surrounding facts of a transaction, and accompanying declarations as well, to explain the act done, or for showing a motive for acting, although such declarations aside from this doctrine may be said to partake of hearsay. 24 Am. & Eng. Ency. Law (2d ed.) 662; 34 Cyc 1642; *Porter* v. *Waltz* (1886), 108 Ind. 40, 46, 8 N. E. 105, and cases cited; *Carr* v. *State* (1884), 43 Ark. 99, 103. In the case last cited the rule is announced in the following language: "Circumstances and declarations which are contemporaneous with the main fact under

consideration or so nearly related to it as to illustrate its character and the state of mind, sentiments or dispositions of the actors are parts of the *res gestae.*"

Appellee's case rests very largely on her own evidence, and she was strongly contradicted on every fact testified to by her. The question of credibility, however, was one for the jury and not for this court. We cannot say that the result reached by the jury would have been the same had the trial court limited the probative force of the evidence objected to and had admitted the proof offered by appellants, and for these reasons we believe the ends of justice require the granting of a new trial.

Judgment reversed, and new trial granted.

NOTE.—Reported in 114 N. E. 694. Husband and wife: (a) action by wife for alienation of affections, 6 Ann. Cas. 661; 14 Ann. Cas. 47; Ann. Cas. 1912C 1179; Ann. Cas. 1916C 748; 46 Am. St. 473. Liability of parent for alienation of affections, 8 Ann. Cas. 813; for causing separation of husband and wife, 9 L. R. A. (N. S.) 322, 46 L. R. A. (N. S.) 467. Competency of one spouse to testify as to misconduct of the other in an action for alienation of affections, 2 L. R. A. (N. S.) 708; 39 L. R. A. (N. S.) 317. See under (1) 21 Cyc 1622; (2) 3 Cyc 248, 4 C. J. 708, 709; (3) 2 Cyc 700, 3 C. J. 850; (6, 7) 21 Cyc 1625.