ROBERTSON and RATLIFF, JJ., concur.

**Robert COMER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 3–880A243.**

Court of Appeals of Indiana, Third District.

March 30, 1981.

Rehearing Denied May 7, 1981.

Sheldon H. Cohan, Merrillville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

STATON, Judge.

Robert Comer (Comer) was tried and convicted by a jury of one count of theft,[1] a class D felony.

As we reverse the trial court's decision, we need only discuss the following issues:

(1) Were parts of testimony entered into evidence inadmissible hearsay?[2]

(2) Was the evidence insufficient as a matter of law to sustain Comer's conviction?

We reverse.

## I.

### Hearsay

Comer operated a retail used merchandise outlet known as "The Big Flea Market" in Gary, Indiana. He was charged with theft[3] as he had allegedly bought a stolen lawnmower and resold it.

At the trial, three police officers testified that a Leroy McAllister had been wired for sound. After they had searched McAllister to ascertain if he had any money,[4] McAllister took an electric lawnmower to the "Big Flea Market." The police officers related that they heard[5] McAllister tell Comer that the lawnmower was one of the lawnmowers McAllister had stolen from Community Discount Store, like he had sold to him before.

On appeal, Comer argues that the officer's testimony of what McAllister said was hearsay. He contends the trial court erred in admitting this testimony.

Hearsay has been defined as follows: "(T)estimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted

therein, *and thus resting for its value upon the credibility of the out-of-court assertor."* (Emphasis original)
*Nuss v. State* (1975), 164 Ind.App. 396, 328 N.E.2d 747, 753.

In *Harvey v. State* (1971), 256 Ind. 473, 269 N.E.2d 759, Justice DeBruler quoted with approval from Wigmore on Evidence, as follows:

" 'The theory of the Hearsay rule (*ante,* § 1361), is that where a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, *therefore, an extra-judicial utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the Hearsay rule does not apply.* The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule.

" 'The prohibition of the Hearsay rule, then does not apply to all words or utterances merely as such. If this fundamental principle is clearly realized, its application is a comparatively simple matter. *The Hearsay rule excludes extra-judicial utterances only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted.'* (Emphasis added.)"

The police officers' testimony was offered to prove the truth of the matters asserted therein; specifically, the testimony was offered to prove that Comer was exer-

---

1. "35–43–4–2. Theft.—A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony. [IC 35–43–4–2, as added by Acts 1976, P.L. 148, § 3, p. 718; 1977, P.L. 340, § 45, p. 1533]."

2. We must first determine what evidence is before the court before we can decide if sufficient evidence exists to sustain the conviction.

3. *See* footnote 1, *supra,* for a complete definition of theft.

4. Before McAllister went to the "Big Flea Market," he did not have any money. When he was searched after being there, he had $15.

5. The officers were approximately 1½ blocks away. They received McAllister's transmission and recorded it as they also heard it. As the tape recording was garbled, it had been suppressed as a result of Comer's pre-trial motion.

cising *unauthorized* control on the property of another.[6]

As hearsay, the testimony should be regarded with suspicion as it is examined to determine if this hearsay testimony fails within one of the recognized exceptions to the hearsay rule.[7] This testimony does not fall within any of the recognized exceptions

**6.** In its brief, the State argues this testimony was only used to prove Comer's state of mind. This is inaccurate. If this testimony is not used to prove Comer exercised unauthorized control of property of another, there is insufficient evidence to convict Comer. *See* Section II, *Infra*. At the trial, the prosecutor argued:

"I believe that the conversation between the defendant and anyone else, specially when they relate to the crime as charged, most definitely are not hearsay, and although this police officer was not there in person, he was certainly able to overhear the conversation, and I believe that he is permitted to testify as to what he heard. That's the purpose of the bug, and I have known of no cases that have excluded this type of conversation. I also refer the court's attention to the case of *Mosqueda [v. State, Ind.App.] 432 [342] N.E.2nd, 679* which indicates police officer under *LaMar v. State* [Ind., 282 N.E.2d 795] is permitted to testify as to what he heard about any contents on tape even though the tape itself may not have been admissible or able to be produced into evidence."

The first part of this statement seems only to refer to the *res gestae* exception which follows. No mention was made of admitting this evidence to show Comer's state of mind.

**7.** One should not lose sight of why these exceptions have been recognized. As was stated in 6 Wigmore on Evidence § 1420, p. 251 (Chadbourn rev. 1976),

"The purpose and reason of the hearsay rule is the key to the exceptions to it.

"The theory of the hearsay rule (§ 1362 *supra*) is that the many possible sources of inaccuracy and untrustworthiness which may lie underneath the bare untested assertion of a witness can best be brought to light and exposed, if they exist, by the test of cross-examination. But this test or security may in a given instance be superfluous; it may be sufficiently clear, in that instance, that the statement offered is free enough from the risk of inaccuracy and untrustworthiness, so that the test of cross-examination would be a work of supererogation. . . ."

**8.** These statements do not fall within the *res gestae* exception to the hearsay rule. To fall within the *res gestae* exception of the hearsay rule, the statement must possess at least the following essential elements:

to the hearsay rule;[8] therefore, it is not sufficiently clear that the statement offered is free enough from the risk of inaccuracy and untrustworthiness that the test of cross-examination is superfluous.

The trial court erred in admitting this evidence for the jury's full consideration over Comer's hearsay objection.

" '(1) * * * must relate to the main event and must explain, elucidate, or in some manner characterize that event, * * * (2) * * * be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair, * * * (3) It must be a statement of fact, and not the expression of an opinion, * * * (4) It must be a spontaneous or instinctive utterance or occurrence of thought, dominated or evoked by the transactions or occurrence itself, and not the product of premeditation, reflection, or design, * * * (5) * * * must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, * * * (6) It must appear that the * * * was made by one who either participated in the transaction or witnessed the act or fact concerning which the statement or declaration was made.' 31A C.J.S. Evidence § 403(1), p. 981.

" 'Most of the Indiana decisions which invoke the shibboleth *res gestae* are found to involve statements made under circumstances of external physical shock such as would quell the reflective faculties and allow the event to speak through the person.' Handbook on Indiana Evidence (1961), I.S.B.A., p. 157."

*Tenta v. Guraly* (1966), 140 Ind.App. 160, 221 N.E.2d 577, 582–583.

These factors have been partially summarized as follows:

"whether a declaration is a part of the *res gestae* depends upon whether the declaration was the facts talking through the party or the party talking about the facts."

*Moster v. Bower* (1972), 153 Ind.App. 158, 286 N.E.2d 418, 425.

This panel has previously stated that a mere narrative of a past, completed affair is not admissible as part of the *res gestae*. *Town of Highland v. Powell* (1976), 168 Ind.App. 123, 341 N.E.2d 804, 810, footnote 11.

The police testified that McAllister said the lawnmower was one of the lawnmowers he had stolen from the Community Discount Store. The State offered this testimony to prove that the lawnmower was stolen. It is not sufficiently clear that the statement is so trustworthy that cross-examination is superfluous; the declaration was the party talking about the facts and not the facts talking through the party.

■ This same evidence was also offered as evidence of Comer's knowledge or state of mind.

"Wherever an utterance is offered to evidence the *state of mind* which ensued in *another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned."

6 Wigmore on Evidence § 1789, p. 314 (Chadbourn rev. 1976). Comer's hearsay objection was properly overruled. This evidence was not admitted for any hearsay uses and can not be so used when Comer specifically objected to using this evidence for hearsay purposes. It was admissible for the limited purposes of showing Comer's state of mind.

Comer also argues that certain police officers' testimony about conversations with McAllister were improperly admitted over his hearsay objection.[9] We disagree.

■ This testimony was not used to assert the truth of the matters asserted therein. It was used to show why Comer was investigated. It does not fall within the category of hearsay. *McNew v. State* (1979), Ind., 391 N.E.2d 607. The trial court reminded the jury of the limited function for which this testimony was admitted during final instructions.[10]

## II.

### Insufficient Evidence,

Comer argues that there was insufficient evidence as a matter of law regarding his alleged unauthorized control over property of another person. We agree.

When considering questions concerning the sufficiency of evidence on appeal, this Court will consider that evidence which is most favorable to the State, together with all the logical and reasonable inferences to be drawn therefrom. *Inman v. State* (1979), Ind., 393 N.E.2d 767. The verdict will not be disturbed if there is sufficient evidence of probative value to support the determination of guilt beyond a reasonable doubt. *Walters v. State* (1979), Ind., 394 N.E.2d 154.

■ We do not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence; rather, we must only find that an inference may be reasonably drawn from the evidence to support the finding of the jury. *Parks v. State* (1979), Ind., 389 N.E.2d 286. If we determine that a reasonable person could not have drawn these essential inferences from the evidence presented, then the evidence is insufficient as a matter of law; under such circumstances it is our duty to reverse the judgment. *Lottie v. State* (1974), 262 Ind. 124, 311 N.E.2d 800.

9. A representative example follows:
 "Q: What, if anything, directed your attention to the defendant Robert Comer?
 "A: Leroy McAllister indicated to me—
 "Q: By Sheldon Cohan: Objection to statements made by Leroy McAllister to the witness. Hearsay.
 * * * * * *
 "Q: During the course of your investigation on July 9th, that particular Sunday, '78, did you focus your attention to defendant?
 "A: Yes I did.
 "Q: For what reason did you focus it on the defendant?
 "A: Leroy McAllister indicated to me that he had—
 By Sheldon Cohan: Objection, Your Honor, the witness's testimony obviously is headed in the direction of recting [*sic*] something

that an out of court person indicated to him. The State knows that we are unable to cross examine that person.
 * * * * * *
 "A: McAllister had admitted to me he had broken into Community Discount Store and had went to a place known as Big Flea Market owned and operated by Robert Comer and sold a lawnmower to him that was stolen from Community Discount Store."

10. "Certain testimony in this case has been admitted for a limited purpose and can only be considered as evidence for such limited purpose. Certain testimony was admitted not for the truth of such testimony, but only to show that such statement or testimony was made."

The elements of the offense of theft which the State had to prove are (1) knowingly or intentionally, (2) exerts control over property,[11] (3) of another person, (4) where the control is unauthorized,[12] and (5) with the intent to deprive the other person of any part of the use or value.[13]

The evidence in the light most favorable to the State on elements three and four (above) is as follows:

 John Shaghnessey is employed by Garden Specialties, Inc., who leases the patio section from Community Discount. Shaghnessey runs the Garden Specialties section at Community Discount and is a supervisor over retail outlets. His records indicated 50 lawnmowers of the type involved in this cause of action had been purchased by the store in February, 1978. He further testified that 2 of these lawnmowers were stolen from the store on June 8th. These lawnmowers did not have serial numbers on them. He stated it was not possible for him to testify that the particular lawnmower in this cause of action was from his place of business. He did state that, to his knowledge, no one else in the retail area of Highland-Gary-Portage, Indiana sold this model. He did admit it was possible for someone else to have them in stock.

As this evidence is insufficient as a matter of law to prove whose lawnmower Comer purchased from McAllister and that Comer had exercised unauthorized control over the lawnmower, we must reverse.

GARRARD, J., concurs.

HOFFMAN, P. J., dissents with opinion.

HOFFMAN, Presiding Judge, dissenting.

I dissent.

Two types of evidence were offered in this case involving the hearsay objection. The first concerns the police officers' testimony relating conversations between McAllister and Comer. The second type of testimony related the officers' own conversations with McAllister. The majority opinion concludes that the hearsay objection is inapplicable in both instances because the evidence was not being offered to prove the truth of the matter asserted therein. This analysis is correct with respect to the second type of evidence only. Based on *McNew v. State* (1979), Ind., 391 N.E.2d 607, the officers may testify about their reasons for investigating a defendant and the hearsay rule is not applicable. The officers' own conversations with McAllister simply established the basis for their investigation and, thus, the evidence was admissible for that purpose.

This analysis is not valid, however, as applied to the first type of evidence. The conversation between McAllister and Comer was overheard by the police officers through the electronic surveillance equipment and the officers' testimony was offered as substantive evidence. The follow-

---

11. "35–43–4–1. Definitions.—(a) As used in this chapter, 'exert control over property' means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property.

"(b) Under this chapter, a person's control over property of another person is 'unauthorized' if it is exerted:

"(1) Without the other person's consent;

"(2) In a manner or to an extent other than that to which the other person has consented;

"(3) By transferring or encumbering other property while failing to disclose a lien, adverse claim, or other legal impediment to the enjoyment of that other property;

"(4) By creating or confirming a false impression in the other person;

"(5) By failing to correct a false impression that the person knows is influencing the other person, if the person stands in a relationship of special trust to the other person;

"(6) By promising performance that the person knows will not be performed;

"(7) By expressing an intention to damage the property or impair the rights of any other person; or

"(8) By transferring or reproducing recorded sounds, without consent of the owner of the master recording, with intent to distribute the reproductions for a profit."

12. See footnote 11.

13. IC 35–43–4–2.

ing discussion occurred when this evidence was first requested from Sergeant Highsmith:

"Q. While you were parked in your vehicle, did you have occasion to hear any conversation between individuals known to you as McAllister and Comer?

"A. Yes I did.

"Q. And what was said?

"BY SHELDON COHAN [Defense Counsel]:

I object to recital of alleged conversation by Leroy McAllister. Hearsay as to this defendant. The witness is not available for cross examination. The defendant cannot cross examine him. The evidence about to be elicited is hearsay and not admissible, and we would at this point refer the court's attention to the last objection of the defendant.

"BY THE COURT:

I'll overrule the objection. The conversation which the officer is permitted to allude to is conversation of Leroy McAllister indicating his interest in the transaction.

"BY SHELDON COHAN:

I move for mistrial.

"BY ANDREW RODOVICH [Prosecutor]:

I believe that the conversation between the defendant and anyone else, specially when they relate to the crime as charged, most definitely are not hearsay, and although this police officer was not there in person, he was certainly able to overhear the conversation, and I believe that he is permitted to testify as to what he heard. That's the purpose of the bug, and I have known of no cases that have excluded this type of conversation. I also refer the court's attention to the case of Mosqueda, [v. State, Ind.App.], 342 N.E.2nd, 679 which indicates police officer under LaMar v. State [Ind. 282, N.E.2d 795] is permitted to testify as to what he heard about any contents on tape even though the tape itself may not have been admissible or able to be produced into evidence.

"BY THE COURT:

At this point I'll overrule the objection, and ask the witness to answer the question."

Clearly, the testimony was offered and received by the court as substantive evidence to prove the truth of the matter asserted therein. The majority opinion confuses the definition of hearsay with an exception to the hearsay rule. The relevant evidence *is* hearsay because it is necessary to prove the substance of the conversation between defendant and McAllister. Nonetheless, the evidence is admissible because it is an *exception* to the rule. This conversation took place as the illegal transaction occurred and, hence, is a part of the res gestae. Indiana has long recognized a res gestae exception to the hearsay rule. *Cauldwell, Inc. et al. v. Patterson* (1961), 133 Ind.App. 138, at 154, 177 N.E.2d 490, at 498.

"'Circumstances and declarations which are contemporaneous with the main fact under consideration or so nearly related to it as to illustrate its character and the state of mind, sentiments or dispositions of the actors are parts of the res gestae.'"

*Daywitt v. Daywitt* (1917), 63 Ind.App. 444, at 454–455, 114 N.E. 694, at 697.

Therefore, this testimony may properly be considered as substantive evidence.

A close review of the transcript of these proceedings shows that the jury considered the conversations between McAllister and Comer as substantive evidence. No limiting instruction was given to the jury at any time during the trial to inform it of a limited purpose. Contrary to the statement in the majority opinion, the trial court did not "remind the jury of the limited function for which this testimony was admitted during final instructions." The final instruction was the first time the jury was told of this limited purpose. The general instruction, cited in footnote 10 of the majority opinion, refers only to "certain testimony" and does not identify any specific evidence

in this case.[1] Based on these instructions, the jury obviously considered the officers' testimony as substantive evidence and acted properly in so doing.

McAllister's statement during his conversation with Comer that he stole the lawnmower from the Community Discount Store is sufficient to establish the necessary element of unauthorized control over the property of another person. It also proves that Comer knew he was buying stolen property at the time he made the purchase. Therefore, the evidence is sufficient and the conviction should be affirmed.

For these reasons, I respectfully dissent.

---

1. The "certain testimony" which was admitted for a limited purpose was not defined for the jury. The only limited purpose of which the jury was informed related to evidence of a prior criminal conviction of the defendant.