ARMSTER HARVEY *v.* STATE OF INDIANA.

[No. 969S208. Filed May 26, 1971. Rehearing denied July 14, 1971.]

474

*William H. Andrews, Robert D. Mann, Baker, Barnhart, Andrews, Baker & Mann,* of Bloomington, for appellant.

*Theodore L. Sendak,* Attorney General, *Lon D. Showley,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from a conviction for second degree murder in a trial by jury in the Monroe Circuit Court. Appellant was sentenced to life imprisonment. Appellant had been charged with first degree murder in Marion County and the case was venued to Monroe County.

Appellant's first contention is that the trial court erred in admitting over objection certain testimony of Detective Dunn concerning extra-judicial statements made by one Willie Adams

who was not a witness at the trial. In order to understand this objection certain facts must be set out.

Appellant was charged with shooting and killing an off-duty police officer in the parking lot of the Marott Hotel at 27th and Meridian Streets in Indianapolis in the early morning hours of Monday, May 27, 1968. The sole evidence placing appellant, armed and on the scene at the time of the killing, was the testimony of Forest McBain. Forest McBain testified that he had been out drinking with the appellant on Sunday evening May 26th. On the way home around 2:00 A.M., May 27th, he had stopped at a stop sign at 27th and Meridian when appellant got out of the car saying "I'll be right back". McBain testified he did not know where appellant was going but it looked as if he were crossing over toward the Marott Hotel. McBain then parked the car about fifty yards from the back of the parking lot of the Marott Hotel. He shut off the lights and the engine but remained in the car. Earlier in the evening appellant had borrowed a foreign made .32 caliber revolver from McBain without telling him why he needed it. Appellant had this gun on his person when he returned to the car. The gun had only five bullets in it when McBain got home and it had had six bullets in it when McBain loaned it to Harvey. Other evidence showed that this gun was the murder weapon.

McBain further testified that around 5 or 6 P.M. Monday, appellant came to McBain's house. Present at the time were McBain, Mrs. McBain, Fred Bradley, and Willie Adams. McBain testified that out in the hallway he questioned appellant about the killing reported in the papers in the Marott Hotel parking lot and appellant said "so what if I did, it won't be the first or the last".

Detective Dunn was then permitted over objection to testify concerning certain extra-judicial statements made to Dunn by Willie Adams concerning that meeting between appellant and McBain. Adams was not a witness at the trial. The following testimony by Dunn was elicited on re-direct examination:

"A.  He said he was present at Forest McBain's home on May the 27th in the afternoon which was on a Monday at about—between 5:00 and 6:00 o'clock and while he was there, he and Fred Bradley and Forest McBain and Mrs. McBain—after Eugene Harvey came up and was talking to Forest and then Forest and he got into a argument about a shootin' and Forest McBain was askin' him did he shoot the man and Harvey said, 'No,' he didn't shoot the man and kept on arguin' backwards and forwards and he said—Eugene Harvey said, 'Well, what if I did. It ain't the last—it's not the first and it won't be the last.' So, he said from that, he didn't know what they was even talkin' about at the time himself, so he left and Harvey and McBain left and went downstairs and he and Bradley was left upstairs and then they left themselves, so, he said he didn't even know what they was talkin' about until at a later time it came to his mind about this shooting on this police officer.

"Mr. Peters: That's all the questions I have."

In *Wells* v. *State* (1970), 254 Ind. 608, 261 N. E. 2d 865, this Court said:

" 'Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of ■ matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' (McCormick, Evidence § 225)

See also Trustees of Indiana University v. Williams (1969), Ind., 251 N. E. 2d 439; Mark v. City of Indianapolis, Etc. (1966), 247 Ind. 511, 219 N. E. 2d 434; Wayne Works v. Hicks Body Co. (1944), 115 Ind. App. 10, 55 N. E. 2d 382; 5 Wigmore, Evidence, § 1361 (3d ed., 1940) ; 2 Jones, Evidence, § 268 (Gard ed., 1958) ; Uniform Rules of Evidence, Rule 63; Model Code of Evidence, Rule 501; Proposed Rules of Evidence for U. S. District Courts, Rule 8-01. The principal reasons for the exclusion of hearsay evidence are that the out-of-court declarant was not under oath, not subject to confrontation by the trier-of-fact, and most importantly, not subject to cross-examination by the accused. McCormack, §§ 224, 225; Wigmore §§ 1360 to 1365; 2 Jones § 269." 261 N. E. 2d at 869.

It is true that not all evidence of extra-judicial utterances qualifies as hearsay evidence.

> "The theory of the Hearsay rule (*ante*, § 1361), is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extra-judicial utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the Hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule.
>
> "The prohibition of the Hearsay rule, then, does not apply to all words or utterances merely as such. If this fundamental principle is clearly realized, its application is a comparatively simple matter. The Hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted." 6 Wigmore, Evidence, § 1766 (3d ed. 1940).

*Wells* v. *State, supra; Trustees of Indiana University* v. *Williams* (1969), 252 Ind. 624, 251 N. E. 2d 439; McCormack, *Evidence,* § 225; 2 Jones, *Evidence,* § 271.

The questioned testimony of Detective Dunn was clearly hearsay. First, it was obviously offered to prove the truth of the facts stated to Dunn by Willie Adams. The alleged assertions of Willie Adams were to the effect that he heard appellant make certain statements to McBain. Whether or not appellant made those statements was the issue. Adams' assertions tended to corroborate McBain's story at trial and were in the nature of incriminating admissions by the appellant.

Second, Dunn's testimony suffers from all the defects of hearsay testimony. Adams, the out-of-court declarant, was not under oath, not subject to confrontation by the trier-of-fact, and most importantly, not subject to cross-examination by the accused when he made his statements to Dunn. Adams' story

would have been perfectly proper evidence if Adams himself had related it from the witness stand. However, the State could not present that same evidence through Detective Dunn.

Appellee's sole argument in support of the admission of Dunn's testimony is that it was harmless error because it was "merely corroborative" evidence in that McBain and his wife had already testified to the same facts. Appellee cites I.C. 1971, 35-1-47-9, being Burns § 9-2320, which reads:

> "In consideration of the questions which are presented upon an appeal, the court shall not regard technical errors or defects, or exceptions to any decision or action of the trial court, which did not, in the opinion of the court to which the appeal is taken, prejudice the substantial rights of the defendant."

We do not agree that Dunn's testimony was without prejudice to the substantial rights of the defendant within the meaning of the statute. In *Adams* v. *State* (1946), 224 Ind. 472, 69 N. E. 2d 21, this Court said concerning this statute:

> "Of course where improper evidence is such as to be influential on an issue to be determined by a jury, it will be presumed to have been prejudicial. . . . But this presumption may be overcome and rendered ineffectual by other evidence in the record. . . ." 224 Ind. at 477.

Dunn's testimony was potentially influential in two different ways. In the first place the evidence did more than corroborate Forest McBain's story. Adams' assertions tended to prove that appellant made an incriminating admission concerning the killing of the police officer. In the second place inadmissible evidence which is merely corroborative is not on that account necessarily harmless. In *Adams* this Court said:

> "The admission of improper evidence which tends only to disclose a fact which is clearly proved by other legitimate evidence is harmless error. . . ." 224 Ind. at 477.

Whether improper corroborative evidence is harmless depends upon the status of the evidence which is being corroborated.

Specifically, the issue here is whether Willie Adams' out-of-court assertions increased the credibility of Forest McBain. Any corroboration of McBain's testimony was very important because McBain himself was so highly implicated in the murder. The police officer was killed with McBain's gun which was in McBain's possession except for the brief time he allegedly loaned it to appellant. McBain was the sole witness who put the murder weapon in the hands of appellant. Near the time of the shooting McBain dropped appellant off near the Marott Hotel and waited for him in back of the hotel even though he testified he did not know where appellant was going when he got out of the car. The victim said he had been shot by a young Negro which applies to McBain as well as appellant. McBain was originally arrested as the prime suspect in the murder and he told the police several different inconsistent stories before telling them the story he told at trial. Charges were then dropped against McBain. Obviously, the credibility of McBain's story was critical for the prosecution and any corroboration of parts of it would be very helpful to the State's case. It is true that McBain's wife also testified to the same facts contained in the extra-judicial assertions of Willie Adams. However, her potential bias is obvious and her corroborating testimony could not render further corroboration of McBain merely cumulative and unnecessary. In these circumstances we do not think the hearsay testimony of Detective Dunn relating assertions made to him by Willie Adams was without prejudice to appellant's substantial rights and therefore harmless error.

Judgment reversed.

Givan, Hunter and Prentice, JJ., concur; Arterburn, C.J., concurs in result with opinion.

ARTERBURN, C.J.—Concurring.

I concur only in the result in the majority decision in this case for the reason that it relies upon the case of *Trustees of Indiana University* v. *Williams* (1969), 252 Ind. 624, 251 N. E.

2d 439. I dissented in that case where hearsay testimony was admitted over objections. The question there was the value of real estate, and one appraiser stated that he did not consider the sale of certain alleged comparable real estate for the reason that *the seller told him he sold in distress and was in need of money.* It is argued in that case that the hearsay testimony was admissible, because the truth of what was said was not in issue. With this I cannot agree, since the existence of a distressed sale of a comparable property certainly was in issue and the opposing party should have a right to confront the one making such a statement and cross-examine such a party.

I otherwise concur in the majority opinion.

NOTE.—Reported in 269 N. E. 2d 759.