Perry Ernest McNEW, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1178S270.

Supreme Court of Indiana.

July 12, 1979.

Gary R. Landau and Preston T. Breunig, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Jack R. O'Neill, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Defendant, Perry Ernest McNew, was convicted by a jury of robbery, a class A felony, and robbery, a class B felony, Ind. Code § 35–42–5–1 (Burns 1979), and sentenced to thirty years and ten years in prison respectively and was sentenced to an additional ten years for aggravating circumstances in the class A offense. Defendant was fined $10,000 on each count. He now appeals raising the following issues:

1. Whether the trial court erred in allowing a police officer to testify as to what one victim and another police officer told him;

2. Whether the trial court erred in sustaining the state's objection to defendant's cross-examination of two police officers regarding the identity of suspects arrested in this cause and regarding accomplices to the robbery; and

3. Whether the trial court erred in considering improper factors as aggravating circumstances and thereby improperly increasing defendant's sentence by ten years.

The facts most favorable to the state are as follow.

On October 6, 1977, defendant, armed with a shotgun, entered Charlie Dye's Liquor Locker in Indianapolis and announced, "This is a robbery . . . ." Defendant and his two accomplices told the two liquor store employees to empty their pockets. Defendant took the money from the employees. Defendant discharged his weapon causing severe and permanent injuries to William Wall. The other liquor store employee, Don Henderson, wrested the shotgun from defendant's grip and defendant fled. Police arrived at the scene immediately thereafter and later apprehended defendant.

### I.

■ Defendant first assigns as error the admission of alleged hearsay testimony of police officer John C. Gillespie. Officer Gillespie testified as to his first meeting with Don Henderson, one of the victims, and the subsequent identification of defendant by Henderson. The testimony of which defendant complains is here set forth:

[*Officer Gillespie:*] "Since I knew nothing about the incident I went over it with him and asked him to describe the subjects involved and I got their ages. He stated they were _ _ _."

*Mr. Brunt:* "Objection to what they stated. It would be hearsay."

*Court:* "Overruled."

[*Officer Gillespie:*] "He said there were two young subjects that first entered the store and they were armed and later on a third subject, and he described him as an older guy around 35, he said he looked like a pimp. I said 'well which ones can you identify?' and he said 'well I can identify the guy that shot my buddy'. He said he had tried to kill him. I said 'well is he 17, 18, 19', trying to determine if I should start with the juvenile files or the adult files and when he said 'well, he was around 18 years old', I thought well, I would take him down to the juvenile branch and I showed him our mugshots down at the juvenile branch. He went through three books in the juvenile branch of black and white subjects of pictures taken of white males prior to their 18th birthday."

Shortly thereafter, Officer Gillespie described to the court how his investigative efforts led him to call a Lieutenant Reed Moistner who had been involved in the investigation of the robbery. Gillespie wanted to ascertain whether there were any particular mugshots that Mr. Henderson should see. He testified:

"I asked Lt. Moistner to tell me about the report that wasn't in the—what we call the dhc, the incident report which was just read. He stated that they had two subjects in jail, I believe it was the juvenile center, at that time. I asked him what the subjects [sic] names were and he gave them to me. I wrote them down somewhere."

Gillespie went on to relate how Henderson identified a photograph of defendant.

"Hearsay evidence is testimony in court, or written evidence, of a statement made

out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." McCormick, Evidence, § 246, p. 584 (2d Ed. 1972); *Wells v. State,* (1970) 254 Ind. 608, 614, 261 N.E.2d 865, 869; *Harvey v. State,* (1971) 256 Ind. 473, 476, 269 N.E.2d 759, 760.

The testimony of Officer Gillespie of statements made by Don Henderson and Lieutenant Moistner was not offered to show the truth of the matters asserted by those individuals. Gillespie did not relate Henderson's statement to show that a robbery had occurred, the ages of the robbers or whether anyone was shot. The purpose of this testimony was to establish the identification procedure involving Henderson, specifically to establish why Officer Gillespie initially took Henderson to the juvenile branch to look at mugshots. Neither did the state introduce testimony regarding statements made by Lieutenant Moistner to prove the facts contained in the out-of-court assertion—that there were two subjects in jail.

The testimony of Officer Gillespie was properly admitted into evidence since it was not offered for the purpose of showing the truth of the matters asserted. *Boles v. State,* (1973) 259 Ind. 661, 291 N.E.2d 357.

II.

Defendant alleges that the trial court erred in sustaining the state's objection to questions asked by defense counsel on cross-examination of two police officers.

Lieutenant Reed Moistner testified that he was the arresting officer in this case, that he was acquainted with defendant and defendant's family and that he conducted the lineup at which Don Henderson identified defendant. On cross-examination, Moistner testified that defendant's brother, John McNew, had been arrested a few days before defendant was arrested. Defense counsel then asked Moistner if he had arrested anyone else on this case. Moistner answered yes. Defense counsel asked, "Who?" and the prosecuting attorney ob-

jected on the ground that the question was irrelevant. The trial court sustained the objection on the ground that the question was not within the proper scope of cross-examination.

This Court has held that "cross-examination of a witness should be limited to the subject matter of his examination in chief." *Potter v. State,* (1971) 257 Ind. 370, 374, 274 N.E.2d 699, 701.

■ Defendant sought to establish the uncertainty of Henderson's identification of defendant, that several persons resembling defendant had been arrested and that the state had conducted a "hit and miss" investigation. However, Lieutenant Moistner had not testified to arrests or accomplices, other than the arrest of John McNew, on direct examination. A party is not allowed to establish his rebuttal to the state's case by cross-examining a witness as to matters not within the scope of direct examination. *Potter v. State, supra, Ringham v. State,* (1974) 261 Ind. 628, 308 N.E.2d 863.

■ The scope and extent of cross-examination is within the sound discretion of the trial court. This Court will interfere only when an abuse of discretion is shown. *Ringham v. State, supra, Inman v. State,* (1978) Ind., 383 N.E.2d 820. Here, the trial judge did not abuse his discretion in this matter by limiting the cross-examination, saying, "He can't go through the whole investigation, unless you want to call him as your witness. Defendant was not hindered in rebutting the state's evidence, but the state's objection to his cross-examination of Lieutenant Moistner was properly sustained.

■ Officer Ronald Bastin testified as to his role in the investigation of this crime. The following exchange between defense counsel and Bastin took place on cross-examination.

Q. "What do you mean it was never alleged that somebody else had a shotgun?"

A. "Just what I mean."

Q. "Well who alleged?"

A.  "William Smith, Mr. Timothy Lawson, Ricky Gunter."
Q.  "Who are they?"
A.  "They were the accomplices in this robbery."
Q.  "Who says?"
A.  "They were charged with it."
Q.  "What happened to them?"

At this point the prosecuting attorney interposed an objection on the ground that the information sought was irrelevant. The trial court sustained the objection.

Defendant claims that there are two issues of material fact which this line of questioning was intended to prove: first, that the identification of the defendant was uncertain and, second, that the sources upon which the police relied in charging defendant were persons charged with the commission of the crime who stood to benefit by the giving of false information. While the evidence offered may tend to prove these facts, and these facts may be material to this case, we fail to see how defendant was prejudiced in this instance.

It appears from the record that police relied primarily on the identification of defendant by Don Henderson. The above testimony is the only reference to any allegations by defendant's accomplices throughout the entire record. Defendant was not prejudiced in any way by the sustaining of the state's objection by the trial court.

### III.

Defendant next asserts that the trial court erred in considering improper factors as aggravating circumstances and thereby increasing the defendant's sentence by ten years. The trial judge sentenced defendant to thirty years' imprisonment and added ten years to that sentence for aggravating circumstances on the count involving the robbery of William Wall. Defendant was also sentenced to ten years' imprisonment on the count involving the robbery of Don Henderson, although he claims no error in the sentencing under the latter count. In arriving at the forty-year sentence for the robbery of William Wall, the trial judge indicated that he considered three factors: (1)

prior criminal activity; (2) the fact that reduced sentence would depreciate the seriousness of the crime; and (3) the seriousness of the crime. Defendant does not complain of the court's consideration of the fact that reduced sentence would depreciate the seriousness of the crime.

■  However, defendant claims that the trial court improperly considered the seriousness of the crime in increasing the sentence from thirty to forty years. Defendant argues that the seriousness of his crime was legislated into the base sentence when the legislature made robbery resulting in serious bodily injury a class A felony. See Ind.Code § 35–42–5–1 (Burns 1979). We do not agree.

The sentencing provision for a class A felony follows:

"A person who commits a Class A felony shall be imprisoned for a fixed term of thirty [30] years, with not more than twenty [20] years added for aggravating circumstances or not more than ten [10] years subtracted for mitigating circumstances; in addition, he may be fined not more than ten thousand dollars [$10,-000]."  Ind.Code § 35–50–2–4 (Burns 1979).

The Indiana statutes provide criteria for sentencing, West's Ann.Ind.Code § 35–4.1–4–7 (1978) provides in part:

"(a) In determining what sentence to impose for a crime, the court shall consider the risk that the person will commit another crime, the nature and circumstances of the crime committed, and the prior criminal record, character, and condition of the person."

When the statute indicates what factors are to be considered in determining what sentence to impose for a crime, the factors are to be considered as aggravating or mitigating circumstances, since Ind.Code § 35–50–2–4 allows no trial court discretion initially by providing that the sentence "shall" be thirty years. Therefore, by the express language of West's Ann.Ind.Code § 35–4.1–4–7(a), the legislature intended that the nature and circumstances of the crime com-

mitted shall be considered as aggravating or mitigating circumstances, otherwise this subsection would have no meaning. Consequently, one cannot say that the particularly serious nature of defendant's crime was already legislated into the underlying thirty-year sentence. The record discloses that the judge conducted an inquiry into the serious nature of defendant's crime, especially regarding the extent of the injuries to Mr. Wall, just prior to pronouncing sentence.

The Indiana sentencing criteria statute provides that certain other factors may be considered as aggravating circumstances. West's Ann.Ind.Code § 35–4.1–4–7(c). One such factor is: "The person has a history of criminal activity." West's Ann.Ind.Code § 35–4.1–4–7(c)(2).

Defendant's presentence report contains a long criminal history. However, there is only one prior conviction, for armed robbery, in his record. The presentence report indicates that the Indianapolis Police Department has picked up defendant three times for malicious trespassing, twice for curfew violations and once for violation of the 1935 Beverage Act. All but one malicious trespass arrest and a traffic offense involving flight from a police officer are part of defendant's juvenile record. His adult record also includes one charge of armed robbery which resulted in a not guilty judgment. The trial judge indicated that he considered the acquittal as part of defendant's prior criminal activity and cited *Misenheimer v. State,* (1978) Ind., 374 N.E.2d 523, as authority for doing so.

Defendant claims that the court erred in considering prior criminal activity which was not reduced to conviction. The state counters that criminal activity includes both charges which were dropped and charges which resulted in acquittal. In *Misenheimer v. State, supra,* this Court held that all charges, whether dropped or whether they resulted in acquittal, could properly be included in a presentence report on "criminal history." This Court, accordingly declined to expunge certain charges from the presentence report when the defendant argued

that this information would prejudice his chances for clemency. However, in *Misenheimer,* we dealt with the meaning of the term "history of delinquency or criminality" and not "history of criminal activity" as set forth in the presentencing criteria statute. The distinction is important. The presentence investigation and report statute provides a broad scope for the report including defendant's social and employment history, family situation, economic status, education and personal habits. West's Ann.Ind.Code § 35–4.1–4–10(a) (1978). The purpose of such a wide-ranging report is to give the judge a feel for the kind of person defendant is through a thorough examination of his background.

Prior criminal activity, however, refers to specific activity of the defendant, not his overall history. We are mindful that the presumption of innocence does not extend to sentencing proceedings. *Gardner v. State,* (1979) Ind., 388 N.E.2d 513. Therefore, a judge does not err in considering prior arrests which had not been reduced to conviction in determining what sentence to impose. But he did not properly consider the armed robbery charge which resulted in acquittal. A not guilty judgment is more than a presumption of innocence; it is a finding of innocence. And the courts of this state, including this Court, must give exonerative effect to a not guilty verdict if anyone is to respect and honor the judgments coming out of our criminal justice system.

While one item was improperly considered by the judge in pronouncing sentence, we cannot say that the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.R.App.Rev. Sen. 2(1). Accordingly we shall not revise the sentence in this case.

For all the foregoing reasons there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., DeBRULER and PIVAR-NIK, JJ., concur.

PRENTICE, J., concurs and dissents with opinion.

PRENTICE, Justice, concurring and dissenting.

I concur as to issues I and II but dissent, in part, as to issue III.

It is my opinion that the trial judge's addition of ten years to the Class A felony sentence is not adequately supported by the record of his reasons for such action. I believe that the "seriousness of the crime" was taken into account when the Legislature fixed the penalty of thirty years. If the circumstances attendant to the commission of this particular crime rendered it more culpable than such crime generally, the judge should have related his reasons in detail sufficient to enable reviewing authority to assess them. Otherwise, the statute may be utilized to foster arbitrariness in sentencing.

I agree that the trial judge was in error when he considered the defendant's prior armed robbery charge upon which he was acquitted, for the reasons expressed in the majority opinion. I do not agree, however, that we should assume that the sentence was, nevertheless, not "manifestly unreasonable," because it would be manifestly unreasonable, if such factor was weighed negatively against the defendant.

Although set forth in the code as one of the criteria which may be considered as an aggravating circumstance, I believe the fourth enumerated cause "imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crime," to be misplaced among such criteria, as a result of an error in legislative draftsmanship. By its terms, it is a basis or criteria for denying probation or reducing the sentence. It does not purport to be a reason for increasing the sentence.

Of the three reasons stated by the trial judge for enhancing the sentence, therefore, it appears to me that one was a clearly erroneous consideration, another was out-side the purview of the legislated criteria and the third was an illogical criteria, inapposite to the tenor of the statute. Therefore, although there may very well have been good and sufficient reasons in the mind of the trial judge for adding to the sentence, upon the record before us I cannot agree that such action was reasonable. The case probably illustrates the need for trial judges to be more specific and detailed in relating their reasons for increasing or reducing the sentences prescribed by the Legislature.

Accordingly, I would affirm the conviction but remand the case to the trial court to reduce the sentence to thirty years imprisonment upon the Class A sentence.