Robert L. HUNT, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 482S149.

Supreme Court of Indiana.

Oct. 21, 1983.

Susan K. Carpenter, Public Defender of Ind., C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Cynthia Sue Stanley, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Robert L. Hunt, Jr., was convicted by a jury in the Elkhart Circuit Court of class A felony armed robbery resulting in bodily injury. He was sentenced to thirty years imprisonment. Appellant now directly appeals and raises the following fifteen issues for our review:

1. alleged error in admission of testimonies of witnesses Kramer and Gentle;

2. denial of Appellant's Motion for Separate Trial;

3. denial of Appellant's Motions for Continuance;

4. denial of Appellant's Motion *in Limine* regarding the testimony of State's witness Starr;

5. denial of Appellant's Motion for Mistrial predicated upon the State's alleged failure to produce certain exculpatory evidence;

6. denial of Appellant's Motion for Mistrial based on certain testimony suggesting Appellant's participation in an allegedly illegal line-up;

7. alleged error in sustaining the State's objections to certain of Appellant's attempts to develop evidence during trial;

8. alleged error in overruling Appellant's objections to certain of the State's attempts to develop evidence during trial;

9. denial of Appellant's Motion to Dismiss because of his allegedly illegal arrest;

10. denial of Appellant's request for separate peremptory striking during the selection of jurors;

11. sufficiency of the evidence;

12. denial of Appellant's Motion for Mistrial based on certain alleged prosecutorial misconduct;

13. denial of Appellant's Motion in Limine regarding certain evidence of Appellant's prior criminal conviction;

14. alleged error in grant of co-defendant Williams' Motion to Terminate Questioning while Appellant was questioning Williams during an offer to prove; and

15. alleged error in the giving and refusing of certain final instructions.

The facts adduced at trial tend to show that at approximately 11:00 p.m. on November 16, 1979, the Kroger Company Store at 1720 Fulton Street in Elkhart was the scene of an armed robbery committed by three men. One of the men struck Gerald Casselman, an employee of the Kroger Company, on his head several times with a pistol. Casselman was not able to identify any of the robbers. Witness Patricia Kramer, another Kroger employee, was able to identify both Appellant-Defendant Hunt and Co-defendant Williams. Witness Pam Gentle, also an employee of the store, was able to identify Hunt. Although Gentle could not positively identify Co-defendant Williams, she was able to describe his general physical features and testified that the "big man" in the trio of robbers looked like Williams. The robbers took $94.00 in cash from the store. Casselman suffered a partial loss of hearing in one ear which necessitated a physician's care.

I

■ Appellant now contends that the trial court erred by allowing State's witnesses Gentle and Kramer to make in-court identifications of him. Appellant filed before trial a Motion to Suppress the testimonies of witnesses Gentle, Kramer and Casselman based on the claim that a pre-trial line-up attended by said witnesses was improperly conducted. After a hearing, the trial court granted Appellant's Motion to suppress the testimony of witness Casselman but denied said motion relative to any in-court identifications by witnesses Gentle and Kramer. The trial court so ruled finding that Kramer and Gentle had a basis for their identifications independent of the line-up. Appellant now claims that the trial court committed reversible error by this ruling. The record shows that Appellant made no objection to the identification testimonies of witnesses Kramer and Gentle at the time those identifications were offered during trial. Appellant accordingly did not preserve any error on this issue and has waived it. *Minneman v. State*, (1982) Ind., 441 N.E.2d 673, *cert. denied* —— U.S. ——, 103 S.Ct. 2099, 77 L.Ed.2d 307; *Andrews v. State*, (1982) Ind., 441 N.E.2d 194; *Pavone v. State*, (1980) Ind., 402 N.E.2d 976, *reh. denied.*

II

■ Appellant next claims that the trial court committed error by denying his Motion for a Separate Trial from Co-defendant Williams. Ind.Code § 35–34–1–11(b) (Burns Supp.1983) directs a trial court to order separate trials whenever the court determines that separate trials are necessary to protect a defendant's right to a speedy trial or to promote a fair determination of the guilt or innocence of a defendant. It is clear, therefore, that the decision to grant or deny a motion for a separate

trial is within the sound discretion of the trial court. Appellant must show that in light of what actually occurred at trial, the denial of a separate trial subjected him to such prejudice that the trial court abused its discretion in refusing to grant his motion for severance. *Crenshaw v. State,* (1982) Ind., 439 N.E.2d 620; *Chandler v. State,* (1981) Ind., 419 N.E.2d 142; *Gutierrez v. State,* (1979) 271 Ind. 639, 395 N.E.2d 218. Appellant now claims that he was prejudiced in four ways by his joint trial.

Appellant first argues that the identification evidence available to the State as to each defendant was substantially different thereby necessitating separate trials. The alleged difference was because the trial court granted Appellant's Motion to Suppress evidence of a line-up relative to himself but did not suppress that evidence as to Co-defendant Williams. Appellant suggests that he was especially prejudiced since witness Kramer had a greater independent basis to identify Williams which must have tended to bolster in the jury's mind her testimony against appellant. As the State points out, none of the three eyewitnesses testified regarding any line-up involving Co-defendant Williams. Casselman could not make any identification. Gentle positively identified Appellant but could do no more than identify a similarity between Williams and the heavier robber. Kramer positively identified both Appellant and Williams. We find no reason to presume that the testimonies of these three witnesses would have been different in a separate trial, hence we find no prejudice shown in this regard.

Appellant secondly claims that he was prejudiced by Williams' refusal to testify. Appellant claims specifically that if Williams had testified, his testimony would have corroborated Appellant's alibi. As the State points out, Appellant offers no evidence to show that Williams would have testified for Appellant in a separate trial. There is, therefore, no prejudice shown on this issue.

Third, Appellant argues that evidence showing that Appellant lived with Co-defendant Williams' sister was prejudicial to Appellant. Appellant's contention is that the evidence of his relationship to Williams' sister somehow tied him to Williams and made his conviction along with Williams more likely. As we previously have indicated, the identification evidence relative to Appellant was stronger than the identification evidence against Williams.

Finally, Appellant argues that the joint trial prejudiced him by forcing him to share peremptory challenges with his co-defendant. Ind.Code § 35–37–1–3(d) (Burns Supp.1983) provides that when several defendants are tried together, they must join their challenges. Provisions of this statute have been upheld previously by this Court. *Morris v. State,* (1977) 266 Ind. 473, 364 N.E.2d 132, *cert. denied,* 434 U.S. 972, 98 S.Ct. 526, 54 L.Ed.2d 462; *Swininger v. State,* (1976) 265 Ind. 136, 352 N.E.2d 473; *Tewell v. State,* (1976) 264 Ind. 88, 339 N.E.2d 792; *Martin v. State,* (1974) 262 Ind. 232, 317 N.E.2d 430, *cert. denied,* 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 841. Furthermore, Appellant has no constitutional right to a given number of peremptory challenges nor does Appellant indicate that he wished to excuse certain jurors but could not for lack of peremptory challenges. Appellant has shown no prejudice to himself, therefore we find no error on this issue.

III

Appellant next claims that the trial court erred by denying certain of his Motions for Continuance. Appellant's claim is that the denial of these continuances denied him effective assistance of counsel. The record shows that charges were filed against Appellant on January 15, 1980. The first trial date set by the trial court was May 19, 1980, but on May 2, 1980, Appellant's trial counsel moved for a continuance. That motion was granted and trial was set for November 10, 1980. On August 1, 1980, Appellant's trial counsel again filed for a continuance. On November 3, 1980, the trial court continued the trial to January 26, 1981. On January 23, 1981, the State requested a continuance which was granted until March 30, 1981.

On March 30, 1981, Appellant's trial counsel informed the trial court of a possible conflict of interest because he represented both co-defendants; the trial court again continued the trial until June 1, 1981. On April 6, 1981, the State noted the problem with Appellant's defense counsel and filed a Motion to Disqualify Appellant's defense counsel who had continued to represent Appellant after the court appointed another counsel for Appellant's co-defendant. On April 9, 1981, the trial court granted the State's motion. On April 30, 1981, Appellant's new trial attorney filed his appearance and also filed a Motion to Continue stating that since trial was set for June 1, 1981, he would have insufficient time to prepare. Said Motion was denied. On May 29, 1981, Appellant's trial attorney renewed his Motion for Continuance claiming that he had difficulty in receiving all of the evidence he had requested of the State. That second Motion also was denied. During a hearing regarding a motion *in limine* on June 1, 1981, Appellant's trial attorney again requested a continuance.

▮▮▮▮ The granting or denying of a motion for continuance based on nonstatutory grounds is within the trial court's discretion. Ind.R.Tr.P. 53.5. In order to demonstrate an abuse of discretion, the record must reveal that the defendant was prejudiced by the failure to grant the continuance. *White v. State,* (1975) 263 Ind. 302, 330 N.E.2d 84, *reh. denied; King v. State,* (1973) 260 Ind. 422, 296 N.E.2d 113, *reh. denied; Blevins v. State,* (1973) 259 Ind. 618, 291 N.E.2d 84. From the time Appellant's new trial counsel entered his appearance in this cause, there was a period of thirty-one days until the commencement of trial on June 1, 1981. The State indicates that Appellant has not alleged that his original trial counsel was not fully prepared for trial and did not aid Appellant's new trial counsel in preparation for trial by supplying him all materials gathered for the defense. There is no showing here that Appellant suffered prejudice by the denial of these continuances and no abuse of discretion is demonstrated. *Downer v. State,* (1982)

Ind., 429 N.E.2d 953; Ind.R.Tr.P. 53.5. We find no reversible error on this issue.

## IV

▮▮▮ Witness Yuonniec Starr testified that he, Hunt and Williams together committed the instant robbery. Starr also testified that he had entered into a plea agreement with the State by which he would testify for the State and against both Appellant and Williams. Appellant's trial attorney filed a Motion *in Limine* to strike Starr's testimony claiming that the plea agreement was illegal. Said agreement was not provided to Appellant until the day Starr was to testify and Appellant claims that his ability to challenge the plea agreement was thereby inhibited. The State contends that the prosecutor orally conveyed to Appellant's trial counsel the substance of Starr's agreement some two weeks before trial. The State further argues that the delay in preparing Starr's written plea agreement was because Starr's agreement was not final until after his testimony in this trial. The details of Starr's plea agreement therefore were not fully arrived at until the time when Starr was about to testify. Said details were immediately furnished to defense counsel at that time. Appellant now claims that the trial court should have granted his Motion *in Limine* restricting Starr's testimony because of problems with his plea agreement. The plea agreement was the subject of a discovery order previously entered by the trial court and Appellant contends that the trial court did not properly control said discovery order. The State argues that the proper remedy for a person who has been denied the benefits of discovery is to seek a continuance; failure to do so constitutes a waiver. Appellant did not move for a continuance relative to the plea bargain issue to obtain time to examine into it in whatever way deemed necessary for his defense. The trial court is given wide discretionary latitude in discovery matters and absent clear error, the trial court's decision will not be overturned when determining whether or not there has been substantial compliance with a discovery order. *Harris v.*

*State,* (1981) Ind., 425 N.E.2d 112. We do not find that the trial court acted improperly here, particularly since Appellant did not seek a continuance for this reason. *Miller v. State,* (1980) Ind., 405 N.E.2d 909.

### V

Appellant moved for a mistrial claiming that the State failed to provide him certain exculpatory evidence by failing to comply with certain discovery orders. As this opinion already states, the trial court is granted deference in finding what constitutes substantial compliance with its discovery order and absent clear error, the trial court's decision will not be overturned. This is because the trial court has the duty to guide and control the proceedings and promote the discovery of truth. *Harris, supra; Spears v. State,* (1980) Ind., 403 N.E.2d 828. The prosecutor's duty to disclose evidence other than that which is particularly requested can be measured by determining whether the evidence is so obviously exculpatory that the failure to disclose it would deny a defendant a fair trial. *Richard v. State,* (1978) 269 Ind. 607, 382 N.E.2d 899, *cert. denied* 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781. Appellant alleges that the State failed to produce records and a statement by witness Casselman pertaining to a line-up which allegedly occurred sometime during the night of the instant robbery. Casselman indicated that he identified two persons in said line-up. The police apparently had no record of such a line-up and the prosecuting attorney had no reference to such a line-up in his records. The State points out that the Record suggests that Casselman was confused about the dates involved since he testified that he was not sure when the line-up and photo identifications occurred. His confusion apparently was because he was beaten on the head with a pistol by one of the robbers. All of Casselman's testimony about the identification of the robbers by line-up or photo identification was suppressed by the trial court and Casselman gave no identification testimony before the jury. Appellant makes no showing that any records or statements of any witnesses pertaining to

the line-up existed in police files and it is conceded that none were in the files of the prosecuting attorney. An appellant must demonstrate that certain exculpatory evidence exists before he can succeed with an argument that he was denied access to said exculpatory evidence. *Swan v. State,* (1978) 268 Ind. 317, 375 N.E.2d 198; *White v. State,* (1975) 263 Ind. 302, 330 N.E.2d 84, *reh. denied.* Appellant did not do this.

Appellant also claims that the State was slow to discover statements made to police by informant Starr which subsequently proved false. The State claimed it complied with Appellant's request to give statements relative to Jerome Sellers. Appellant claimed that the State failed to discover polygraph charts and graphs of witnesses Starr and Curry and Appellant and Co-defendant Williams. The Record shows that these materials were provided on the day prior to trial. Finally, Appellant argues that the State failed to discover a report by Officer Nussbaum concerning another suspect. The State argues that this report was given to Appellant's original trial counsel who then took Officer Nussbaum's deposition. Appellant does not show that his previous counsel failed to provide him this material. The State was of the opinion at trial that the report was not considered exculpatory because any leads provided by it proved to be useless. We find nothing about the trial court's handling of discovery matters in the instant case which demonstrates an abuse of discretion. The discovery problems appear to be no different than those normally encountered in the trial of criminal cases and the trial judge properly responded to them. We therefore find no error on this issue. *Harris, supra; Spears, supra.*

### VI

Appellant moved for a mistrial based upon alleged prosecutorial misconduct. The trial court previously had found that a line-up was improperly conducted and accordingly ordered that no mention of the line-up be made before the jury. Pam

Gentle testified for the State and made no mention of the line-up during her direct examination. On cross-examination, Appellant's trial counsel examined Gentle as follows:

"Q: Did you see Mr. Hunt one night before—

A: (Interrupting) No.

Q: (Continuing)—in person?

A: I had never seen him before until that night.

Q: I'm talking about before today?

A: In pictures?

Q: Yeah.

A: Yeah, and I saw him in a line-up."

Defense counsel did not immediately object. At the end of Gentle's testimony, defense counsel requested leave to make a motion outside the jury's hearing. Defense counsel subsequently moved for a mistrial based on this statement by witness Gentle. The State's argument is well taken that Appellant waived this issue by failing to object to the statement when made. An objection to allegedly improper testimony is required at the critical point in the trial when the evidence is offered so that it might be corrected by the trial court at that time. *Jones v. State,* (1981) Ind., 425 N.E.2d 128; *Pavone, supra.* Moreover, there is no showing of prosecutorial misconduct here as the statement was made by the witness during cross-examination in an attempt to answer questions by defense counsel. There is no showing or inference that the prosecuting attorney induced the witness to make this statement. *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843. The denial of a mistrial motion rests largely within the discretion of the trial court and this Court will reverse only when it is shown that a defendant was placed in a position of grave peril to which he should not have been subjected. Appellant must demonstrate prejudice to obtain a reversal. *Morgan v. State,* (1981) Ind., 419 N.E.2d 964. Appellant did not object at the time Gentle's statement was made nor did Appellant request that the trial court admonish the jury. In view of Appellant's identification by two eyewitnesses, we find that Appellant was not placed in a position of grave peril by this statement that the witness had seen him in a line-up.

## VII

■ Appellant next claims reversible error in each of several of the trial court's rulings sustaining the State's objections to questions asked of witnesses by the defense. We find no reason to unduly encumber this opinion with countless recitations of the trial court's rulings on objections to questions asked which did not in any way affect the substance of Appellant's defense. Objections were sustained in many instances simply because a proper foundation had not been laid or because the anticipated answer would be repetitious of answers already given. When a proper foundation was laid or a question was asked in a different manner, further questioning was permitted. Appellant claims that he was cut off from examining witness Starr about the legal aspects of his plea-bargain agreement. The State points out that Appellant exhaustively covered all aspects of Starr's plea bargain agreement and of his compensation for being an informant. Further, the State contends that Appellant failed to make any showing that Starr was competent to testify as to the legality or illegality of his plea bargain. There was no showing that any such testimony by Starr would have been relevant to any material facts in this case as the technical legality of his plea bargain would affect only his relationship with the State and not the weight of his evidence before the jury. The evidence shows that Appellant was given wide latitude to examine all of the witnesses and failed to show that he was prejudiced in any manner by any of the instances when the trial court sustained objections to his questions. The trial court has discretion to limit the scope of cross-examination and there is no showing here that it abused that discretion to the prejudice of Appellant. *McNew v. State,* (1979) 271 Ind. 214, 391 N.E.2d 607.

## VIII

■ Appellant next claims that the trial court committed reversible error by

overruling numerous objections made by defense counsel during trial concerning questions asked of the witnesses by the State. Again we note the scope and extent of cross-examination to be within the sound discretion of the trial court and this Court will interfere only when an abuse of that discretion is shown. *McNew, supra.* Appellant called Elkhart Police Detective Thomas and questioned him concerning the confidential informant status of State's witness Starr. Said questioning covered Starr's compensation and information about those times when Detective Thomas was dissatisfied with Starr's help. On cross-examination, the State asked Thomas about Starr's general reliability as an informant to which the defense objected. The trial court overruled this objection. The State contends that the question was proper and within the scope of cross-examination based on the information brought out by Appellant in his direct examination. *Porter v. State,* (1979) 271 Ind. 180, 391 N.E.2d 801, *reh. denied.* We agree with the State and find that the ruling of the trial court was proper and did not prejudice Appellant.

Appellant also objected to questions asked of Detective Cutler concerning what he learned from Starr and from other officers when beginning his investigation of this case. Appellant's objection was that these questions sought hearsay evidence. These questions were introductory in nature and were offered only to show the investigative process followed by Detective Cutler and not the truth of another's statements. *McNew, supra.* The facts sought were already in evidence and in no way unduly prejudiced Appellant. Appellant makes no showing that he was in any way unduly prejudiced by the State being permitted to elicit answers to the questions to which Appellant had objected. No reversible error was demonstrated by this issue.

### IX

Appellant also contends that the trial court erred by denying his Motion to Dismiss since he was illegally arrested without an arrest warrant and the State was unable to show any exigent circumstances. Appellant filed motions in the trial court to dismiss the instant charge claiming that the supporting probable cause affidavit was defective as it was not factually correct. He further claimed in a later motion that the charge should be dismissed based on the illegal and unduly suggestive identification procedures utilized against him. The trial court did suppress some evidence obtained during Appellant's arrest and held a hearing to ascertain any independent identification grounds to support the testimonies of witnesses Kramer and Gentle. The trial court denied motions to suppress the identification testimonies of Kramer and Gentle finding that they possessed a basis for identification independent of the line-up. This issue was considered in Part I, *infra.* Appellant now alleges error but cites no authority to support his contentions. We have only his recitation that the cause should have been dismissed with no statute or case law. Appellant has waived the issue. Ind.R.App.P. 8.3(A)(7).

### X

Appellant claims that the trial court erred by refusing to grant him separate peremptory strikes during jury selection. Ind.Code § 35–37–1–3(d) (Burns Supp.1983) provides that when two or more defendants are tried together, they must join in their peremptory challenges. This statute had been upheld by this Court on numerous occasions. *Morris, supra; Swininger, supra; Tewell, supra; Martin, supra.* Furthermore, Appellant does not show that he exhausted all of his peremptory challenges. In fact, the *voir dire* transcript is not even in the Record. There is, therefore, no substantiation of Appellant's objection or of his Motion for a separate number of peremptory challenges. Bare assertions of error not disclosed by the Record are not available for review and are considered waived. *Brown v. State,* (1981) Ind., 417 N.E.2d 333; *Daniels v. State,* (1980) Ind., 408 N.E.2d 1244.

## XI

Appellant claims insufficient evidence to identify him as the perpetrator of the instant crime and to support his guilty verdict. We find no merit to this issue. Witnesses Kramer and Gentle both identified Appellant as one of the robbers giving details of his criminal activity and of their ability to observe him. Since we do not weigh the evidence or judge the credibility of witnesses but look only to the evidence most favorable to the State together with all reasonable and logical inferences drawn therefrom, we must conclude that there was sufficient evidence to justify the jury's verdict. *Oliver v. State,* (1982) Ind., 431 N.E.2d 98; *Lewis v. State,* (1978) 270 Ind. 91, 383 N.E.2d 65.

## XII

Appellant alleges that the trial court committed reversible error by denying his Motion for Mistrial or, in the alternative, his Motion *in Limine* based upon the prosecuting attorney's impeachment use of prior conviction evidence during cross-examination. The prosecuting attorney asked Appellant: "Isn't it true that you were convicted of theft in Chicago in 1972?" Appellant's objection to the question was that the prosecuting attorney had told defense counsel prior to trial that he knew of no felony convictions reflected on Appellant's F.B.I. "rap" sheet. It appears that both attorneys had examined the "rap" sheet and found nothing thereon which showed Appellant guilty of a felony. The theft conviction in Chicago did not appear on the "rap" sheet. Appellant now claims that this is one of the reasons he determined to testify in his own behalf. The prosecuting attorney indicated that while Appellant was on the witness stand and being questioned by his trial counsel, he examined his case file and came upon a form filled out by the probation office and used for the purpose of determining whether or not to release Appellant on bond prior to trial. The form had been completed during an interview with Appellant and the information contained therein was given by Appellant himself. The fact that Appellant was convicted of theft in 1972 was given to the probation office by Appellant. This pre-release intake form was filed with the trial court and both of the parties were furnished with a copy of it. The prosecuting attorney said that he did not think that he had made any commitment to Appellant that he would not use any felony that he became aware of. His statement was that he found no felony convictions on the F.B.I. sheet and did not know of any at the time of the pretria conversaton. We again note that Appellant had a copy of this form in his file and of course was aware of this conviction. Appellant argued outside the jury's presence that this represented overreaching by the prosecuting attorney and was meant to be an evidentiary harpoon which should not have been permitted by the trial court. The trial court found no reasons to grant a mistrial based on these circumstances and no justification to grant a motion *in limine* since the question was proper to impeach Appellant.

The Record showed that Appellant was convicted of auto theft in 1972 and was given a one-year sentence for which he was put on probation. The State properly contends that theft is available for use in impeachment as a crime involving dishonesty or false statement. *Geisleman v. State,* (1980) Ind., 410 N.E.2d 1293; *Fletcher v. State,* (1976) 264 Ind. 132, 340 N.E.2d 771; *see Ashton v. Anderson,* (1972) 258 Ind. 51, 279 N.E.2d 210. Furthermore, we find that the trial court did not abuse its discretion by finding that the prosecutor acted properly. The trial court has great discretion in determining whether or not to grant a motion for mistrial and reversal will result only from clear error in the trial court's ruling. *Brown, supra; Drollinger v. State,* (1980) Ind., 408 N.E.2d 1228.

## XIII

Appellant also claims that the trial court erred by admitting into evidence the pretrial release intake form of the probation office referred to in Issue XII above. The Record shows, however, that this form was

never offered or admitted into evidence. When the prosecuting attorney was permitted by the trial court to re-ask his question pertaining to Appellant's prior conviction, Appellant admitted that he had been convicted of theft in 1972. There is nothing further on the Record on this issue. There is, therefore, no error presented on this issue.

### XIV

After the State, Appellant and Co-defendant Williams had rested their respective cases, Appellant called Williams to the witness stand out of the presence of the jury and attempted to establish that had Williams testified, he would have corroborated Appellant's alibi defense. The purpose for seeking this testimony was to support Appellant's argument that he should have been granted a separate trial. Williams refused to testify on Fifth Amendment grounds, however, and the trial court sustained a motion to terminate Appellant's questioning of Williams. Appellant thereupon summarized to the trial court what he thought Williams would testify to had he testified. Appellant now claims that the trial court erred by granting Williams' motion to terminate questioning. Appellant cites no authority in support of his contention, therefore, the issue is waived and we will not consider it. Ind.R.App.P. 8.3(A)(7).

### XV

Finally, Appellant claims that the trial court erred by giving and refusing certain instructions. Instruction No. 4 was given describing the crime of robbery while armed in the language of the applicable statute. Appellant claims the instruction was misleading because the first sentence omitted the words "while armed." In examining the Record, we find the instruction did, in fact, utilize the words "while armed" three times and consequently was appropriate. Instruction No. 25 instructed the jury that they were not given any specific information concerning penalties because the trial judge alone had the responsibility to assess penalties and their verdicts were not to be influenced by the apparent severity or leniency of any possible sentence. This was a correct statement of the law. Appellant tendered an instruction which told the jury that the trial court could not suspend the sentence if Appellant was found guilty of robbery. Appellant also tendered an instruction which advised the jury that aggravating and mitigating circumstances could be used by the trial judge to determine the length of sentence. The trial court properly refused these tendered instructions. Under Ind.Code § 35–50–2–2 (Burns Supp.1983), discretion is vested in the trial court to suspend a sentence unless one of a series of exceptions applies. This decision is not shared with the jury. The same is true of aggravating or mitigating circumstances in the determination of a sentence by the trial judge. Ind.Code § 35–4.1–4–7 [§ 35–50–1A–7] (Burns 1979), § 35–38–1–7 (Burns Supp.1983). Appellant also tendered an instruction to the jury which told them that the plea bargain agreement between Starr and the State would not be fulfilled until after Starr's testimony in Appellant's trial. As the State indicates, the jury was adequately apprised of the nature of this plea bargain during Starr's direct and cross-examination. Starr described the plea bargain and its provisions and stated that it was made in exchange for his truthful testimony in this trial. Furthermore, Starr's testimony indicated that the plea bargain was as yet tentative and would not be fulfilled until after his testimony in this case. These questions of fact were brought out before the jury so that it might use them to determine the credibility of witness Starr; they were not the subject of a legal principle which the jury was required to know to reach its verdict. The trial court properly refused the instruction. Finally, Appellant claims that the trial court erred by denying his tendered instructions on the lesser included offense of theft. Appellant did not challenge the existence of the elements of the charged crime but steadfastly maintained that he was in no way involved. Accordingly, there was no evidence from which the jury could find that Appellant, if

guilty, committed the crime of theft and not robbery. The trial court therefore properly rejected Appellant's tendered instruction on the lesser included offense. *Tawney v. State,* (1982) Ind., 439 N.E.2d 582, *reh. denied; Brown v. State,* (1981) Ind., 416 N.E.2d 828.

The trial court is in all things affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.